## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CARLA THOMAS,

      Plaintiff,

      v.                           Case No.  07-2005-JWL

TIMOTHY M. SIFERS, M.D., P.A. and
TIMOTHY L. SIFERS, as the Executor
of the Estate of Timothy M. Sifers, M.D.,

      Defendants.

_____

### MEMORANDUM AND ORDER

This lawsuit arises from complications following a bariatric weight reduction surgery that was performed on plaintiff Carla Thomas by Timothy M. Sifers, M.D., who is now deceased.  Ms. Thomas alleges that Dr. Sifers was supposed to perform the surgery using a new technique called the duodenal switch, a procedure that is allegedly associated with fewer complications than older weight loss procedures, but that Dr. Sifers actually performed an unrecognized and unknown variation of a much older procedure and, as a result, Ms. Thomas suffered severe complications.  Ms. Thomas asserts claims against Dr. Sifers' medical practice and his estate (collectively referred to as Dr. Sifers) for fraud, negligence, battery, and a violation of the Kansas Consumer Protection Act.  This matter is currently before the court on defendants' Motion for Summary Judgment (doc. #33) based on the applicable statutes of limitations.  For the reasons explained below, the court will deny the motion as

to plaintiff's fraud and negligence claims, and will grant the motion as to plaintiff's battery and Kansas Consumer Protection Act claims.[1]

## STATEMENT OF MATERIAL FACTS[2]

Plaintiff Carla Thomas originally scheduled to undergo a gastric bypass procedure with another physician to alleviate serious health problems associated with her morbid obesity, including a pseudotumor cerebri.  On February 28, 2001, her mother called her and said she had seen a Healthwatch report on her local news station that featured Dr. Sifers as performing a new and revolutionary weight loss surgery in Kansas City called the duodenal switch.  In the segment, Dr. Sifers spoke about a "new" weight reduction procedure that allows patients to eat whatever they want and still lose weight while having few side effects. Ms. Thomas's mother called and discussed the surgery with her because she knew that Ms. Thomas was already scheduled to undergo the gastric bypass.  Ms. Thomas and her mother,

---

[1] Plaintiff's Unopposed Motion for Leave to File Surreply (doc. #70) is denied because the court anticipates that the issues plaintiff intended to address in that surreply are being resolved in plaintiff's favor.  If, however, plaintiff believes that she has been denied the opportunity to respond to any argument raised by defendants for the first time in their reply brief concerning the statute of limitations on plaintiff's battery or Kansas Consumer Protection Act claims, the court would be willing to address any such argument in the context of a motion to reconsider.

[2] Consistent with the well established standard for evaluating a motion for summary judgment, the following facts are either uncontroverted or stated in the light most favorable to plaintiff, the nonmoving party.

sitting together, called Dr. Sifers' office to set up a consultation appointment for Ms. Thomas.

During the consultation on March 5, 2001, Dr. Sifers represented to Ms. Thomas in consultation and in the presence of her mother that he would perform the new weight reduction surgery upon her, the duodenal switch, the same procedure that he had previously represented on the Healthwatch segment that he could perform. He told her that she did not want to have the gastric bypass she had previously scheduled with another surgeon because if she did she could gain her weight back, her stomach would stretch out, she would go blind, and then she would die from complications related to her pseudotumor cerebri. Dr. Sifers told her that he was familiar with her pseudotumor cerebri and that his duodenal switch surgery was actually a treatment for it because she would lose the weight with his procedure and keep it off, unlike the gastric bypass. After the consultation, Ms. Thomas cancelled the appointment she had previously scheduled to undergo the gastric bypass with another physician and she scheduled to have Dr. Sifers perform the new procedure.

Prior to the surgery, Dr. Sifers and his staff informed Ms. Thomas that there would be several probable but temporary side effects that would diminish after the first six months following her surgery. Dr. Sifers told Ms. Thomas that gallstones, poor sugar and fat absorption, reflux, diarrhea, and bowel odor were all probable results of the surgery, but that these would only be temporary side effects that would otherwise subside over time. Ms. Thomas understood that one of the benefits of the duodenal switch surgery would be the

avoidance of "dumping syndrome."[3]  Dr. Sifers advised her that as long as she avoided

sugary foods and ate a lot of protein, she could otherwise eat whatever she wanted.  He told

her that she would lose weight and never gain it back as long as she didn't "sit around all day

drinking Coke and eating Hershey's Kisses."

The surgery was performed on March 19, 2001.  Dr. Sifers contends that he performed

a biliopancreatic diversion.  In support of this, he points out that prior to her surgery Ms.

Thomas signed a consent authorizing him to perform a "biliary [sic] pancreatic diversion

with partial gastrectomy" and that his operative notes list the operation performed as

"[b]iliopancreatic diversion."   Ms. Thomas, on the other hand, contends that Dr. Sifers

performed an unknown and unrecognized procedure despite his representations that he would

perform the duodenal switch procedure.  She also points out that his standing orders for her

suggest that he was performing the duodenal switch, as those orders are entitled "Standing

Orders for Vertical Banded Gastoplasty and Duodenal Switches" and they state as follows:

"For duodenal switches: patient will receive ½ golytely prep and Reglan 10mg from office."

Regardless of the parties' dispute about the nature of the procedure actually performed, it is

uncontroverted that, unbeknownst to Ms. Thomas, Dr. Sifers did not perform the duodenal

---

[3] Gastric dumping syndrome happens when the lower end of the small intestine fills too quickly with undigested food from the stomach.  The symptoms include nausea, vomiting, bloating, cramping, diarrhea, fatigue, weakness, sweating, and dizziness. *See* Wikipedia, http://en.wikipedia.org/wiki/Gastric_dumping_syndrome. The court wishes to specifically note that it is not endorsing the use of Wikipedia as a reliable source for citation, but the general nature of gastric dumping syndrome appears to be fairly generally accepted and provides context to understanding the parties' dispute here.

switch or even the biliopancreatic diversion with duodenal switch.  Ms. Thomas was discharged from the hospital on March 23, 2001.

Ms. Thomas suffered from a number of complications following the surgery.  Dr. Sifers' motion for summary judgment is grounded in the notion that by the end of 2003 she had begun experiencing a multitude of health problems beyond what she associated with the duodenal switch procedure.  For example, she had to have her gall bladder and appendix removed; she had incisional hernias repaired; she was not able to eat anything she wanted, and in fact even drinking water caused her to experience diarrhea; she would vomit whenever she tried to eat steak, rice, or pasta; she suffered dry, flaky, pale skin; she experienced constant hunger; she had headaches; she had hair loss; she experienced dental problems, including a cracked tooth; she had poor sleep patterns; she had diarrhea continuously and that diarrhea, which she thought would last no more than three to six months post-operatively, was actually worse six months after surgery; she suffered six to eight anal fissures; she has had vomiting and nausea constantly; she had fainting spells; she was diagnosed with acute anemia; she had low blood pressure; she developed hypothroidism; she began having heart palpitations; she developed shortness of breath; she suffered from fatigue; she suffered from the daily effects of "dumping syndrome" in that she has more than ten bowel movements a day and all-over aches, cramps, and tenderness; and she suffered a "horrid" increase in the frequency and odor of her bowel movements and gas.  Her health problems were so severe that she considered surgical reversal of her weight loss procedure as early as April of 2003. When she inquired of Dr. Sifers about the possibility of a reversal, he advised her that she

did not want her weight loss procedure reversed because she would gain her weight back, go blind, and die.

Dr. Sifers saw Ms. Thomas for a total of fifteen follow up visits for a period of over three and a half years on the following dates: April 4, 2001, May 2, 2001, June 25, 2001, August 27, 2001, October 24, 2001, February 21, 2002, April 23, 2002, July 23, 2002, October 22, 2002, November 15, 2002, March 20, 2003, March 23, 2004, October 6, 2004, October 12, 2004, and October 14, 2004. Dr. Sifers never told Ms. Thomas at any of those visits that he had not performed the duodenal switch as he had promised. Instead, he told her it was normal for her to vomit after eating steak, rice, or pasta immediately after her surgery. He repeatedly told her that the diarrhea was not a result of her surgery and that she needed to research her family history for a possible explanation. He went on to suggest colitis as the cause of her diarrhea and stated that diarrhea was not something caused by the surgery. He told her that her anemia was not typical and was not a result of the surgery; he told her that something else must be going on and she should check her family history for an explanation. He told her that her headaches were a result of her anemia. He told her that her hair loss was a normal and temporary condition following weight loss surgery and that she should eat more protein. He said her diarrhea was causing her anal fissures. He also told her that her nausea and vomiting must be the result of another condition and she needed to research her family history to find the cause. He told her that her fainting spells were not typical and were not a result of the surgery. In sum, he always told Ms. Thomas each time she came to him with

complaints that the symptoms she was experiencing were either normal or not a side effect of her weight loss surgery, and that she should check her family history for an explanation.

During one of the follow-up visits with Dr. Sifers after her surgery, Ms. Thomas noticed that he wrote the term "BPD" in her chart.  She asked Dr. Sifers what the abbreviation meant and Dr. Sifers told her that BPD/DS was another name for the duodenal switch, that it was "easier to say," and that she should tell her doctors that she received the biliopancreatic diversion with duodenal switch or BPD/DS.  In fact, he specifically testified in his deposition that he "wasn't making a distinction at all at that time about the two [meaning the biliopancreatic diversion and the duodenal switch].  As a matter of fact, [he] was even calling the procedure a duodenal switch back then."  According to Dr. Sifers, he used the terms "duodenal switch" and "biliopancreatic diversion" interchangeably in his medical reports and in his representations to his patients.  He explained that he usually used the term "duodenal switch" instead of biliopancreatic diversion because it was "easier to say."

Ms. Thomas applied for disability benefits in July of 2003.  She did not understand any of the symptoms of her health problems included in her application to be conditions arising from her weight loss surgery with Dr. Sifers.  Her application was based on numerous conditions, including pseudotumor cerebri, degenerative disc disease, and anemia.  Dr. Sifers points out that in connection with Ms. Thomas's application for disability benefits, she requested and received her medical records from his office in December of 2003, and those medical records contain at least twenty-nine references to "biliopancreatic diversion" or

BPD. Ms. Thomas, however, denies reading those medical records. She explains that she requested them for her disability attorney and, upon receiving them from Dr. Sifers' office, she handed them directly to her disability attorney without reviewing them.

Ms. Thomas remained under the belief that she had received the duodenal switch after her surgery and up until July of 2006. At that time, she went to search for Dr. Sifers' website to see if it had any suggestions for alleviating severe abdominal pain. When she performed an Internet search for "Timothy Sifers" to locate his website for advice about her abdominal pain, the search results revealed two articles from *The Pitch Magazine*. She read both of them and discovered that he had not performed the duodenal switch procedure. Ms. Thomas filed her complaint in this case on January 3, 2007, asserting claims for fraud, negligence, battery, and a violation of the Kansas Consumer Protection Act.

Dr. Sifers now moves for summary judgment on plaintiff's claims against him based on the applicable statutes of limitation. Defendants' theory is that by the end of 2003, Ms. Thomas knew that she was experiencing a multitude of debilitating symptoms that she did not believe to be associated with the duodenal switch procedure. Consequently, plaintiff's various claims (which are governed by one, two, three, and four year statutes of limitations and repose) that were filed more than four years later are time barred. Plaintiff, on the other hand, argues that she did not discover that Dr. Sifers had performed the wrong surgery until July of 2006 when she discovered the articles on the Internet.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler*, 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding*, 279 F.3d at 904 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

9

(1986)); *see also Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324.  The nonmoving party

may not simply rest upon its pleadings to satisfy its burden.  *Anderson*, 477 U.S. at 256; *Eck*

*v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).  Rather, the nonmoving party

must "set forth specific facts that would be admissible in evidence in the event of trial from

which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore*, 218

F.3d 1190, 1197-98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671).  To accomplish this,

the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific

exhibit incorporated therein." *Adams,* 233 F.3d at 1246.

Finally, the court notes that summary judgment is not a "disfavored procedural

shortcut"; rather, it is an important procedure "designed 'to secure the just, speedy and

inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ.

P. 1).


## ANALYSIS

For the reasons explained below, the record contains disputed issues of fact sufficient

for plaintiff to survive summary judgment on her fraud and negligence claims.  A rational

trier of fact could conclude that she could not have discovered the alleged fraud with

reasonable diligence because in her interactions with Dr. Sifers during subsequent office

visits he lulled her into confidence that he did not perform any procedure on her other than

the duodenal switch and therefore her symptoms were not caused by the procedure.  For

essentially similar reasons, a question of fact exists concerning whether Dr. Sifers should be

equitably estopped from asserting the statutes of limitation and repose on her negligence claim on the grounds that he fraudulently concealed from her that he performed the wrong surgery. Defendants are entitled to summary judgment on plaintiff's battery and Kansas Consumer Protection Act claims, however, because those claims are not subject to any similar discovery or tolling doctrines.

**I.    Fraud Claim**

In Kansas, a fraud claim has a two-year statute of limitations. K.S.A. § 60-513(a)(3). The claim does not accrue "until the fraud is discovered." *Id.* Under Kansas law, fraud is discovered at the time of actual discovery or when, with reasonable diligence, the fraud could have been discovered. *Miller v. Foulston, Siefkin, Powers & Eberhardt*, 246 Kan. 450, 465, 790 P.2d 404, 415 (1990); *Waite v. Adler*, 239 Kan. 1, 6, 716 P.2d 524, 527 (1986). Mere suspicion of wrongdoing will not suffice where the plaintiff foregoes further investigation by virtue of having been lulled into confidence by the offending party. *Price v. Grimes*, 234 Kan. 898, 900, 677 P.2d 969, 972 (1989); *Augusta Bank & Trust v. Broomfield*, 231 Kan. 52, 63, 643 P.2d 100, 108 (1982). The issue of when a plaintiff discovered or should have discovered alleged fraud is a question of fact. *Bryson v. Wichita State Univ.*, 19 Kan. App. 2d 1104, 1109, 880 P.2d 800, 804 (1994); *see also Wolf v. Preferred Risk Life Ins. Co.*, 728 F.2d 1304, 1306-07 (10th Cir. 1984).

Here, the court has no difficulty concluding that a rational trier of fact could find that she could not have discovered the alleged fraud with reasonable diligence before January 3, 2005. Certainly, as defendants point out, by that time she was aware that she was suffering

from numerous symptoms that she did not believe should have been associated with the duodenal switch procedure. But, viewing the record in the light most favorable to Ms. Thomas, Dr. Sifers lulled her into confidence from pursuing any further investigation into the matter by virtue of their interactions during fifteen follow-up visits over three and a half years. He had numerous opportunities to tell her that he had not performed the duodenal switch procedure on her, a procedure that allegedly would have avoided the vast majority of her symptoms. Instead, he affirmatively told her that he used the term BPD as representing the DS procedure and he told her that the various unanticipated symptoms she was experiencing were either normal or not side effects of her weight loss surgery, and that she should check her family history for an explanation. A rational trier of fact could also discount defendants' reliance on the references to BPD and biliopancreatic diversion contained in plaintiff's medical records for at least two reasons. First, plaintiff has stated that she did not review the medical records but rather obtained them at the request of her disability attorney and, upon receipt, she simply forwarded them on to her attorney. Second, Dr. Sifers essentially told plaintiff that he did not use any distinction between the different types of terminology. Given the sophisticated medical terminology associated with the various procedures along with Dr. Sifers' repeated assurances to Ms. Thomas that her various symptoms were not attributable to the surgery, then, the issue of when Ms. Thomas could have discovered with reasonable diligence that she did not receive the duodenal switch

12

procedure originally promised to her by Dr. Sifers is a question of fact.  Accordingly, this aspect of defendants' motion for summary judgment is denied.[4]

## II.   Negligence Claim

Medical negligence actions must be brought within two years of the date of injury or the date the injury becomes reasonably ascertainable to the injured party.  *Smith v. Graham*, 282 Kan. 651, 655, 147 P.3d 859, 863 (2006) (citing K.S.A. § 60-513(a)(7), (c)).  Additionally, no such action shall be commenced more than four years "beyond the time of the act giving rise to the cause of action." § 60-513(c).  This creates a four-year statute of repose on medical malpractice actions.  *Harding v. K.C. Wall Prods., Inc.*, 250 Kan. 655, 668, 831 P.2d 958, 968 (1992).  Here, the act giving rise to plaintiff's cause of action was the weight loss procedure performed by Dr. Sifers.  He performed this surgery on March 19, 2001.  Plaintiff did not file her complaint until January 3, 2007, which was well over four years after March 19, 2001.  Consequently, her claim would ordinarily be barred by the statute of repose.

In this case, however, Ms. Thomas argues that Dr. Sifers is equitably estopped from asserting the statute of limitations or the statute of repose as a defense because he fraudulently concealed from her the fact that he performed a different procedure.  The Kansas

---

[4] Plaintiff may also be entitled to the tolling of the statute of limitations on her fraud claim under a fraudulent concealment theory.  *See Robinson v. Shah*, 23 Kan. App. 2d 812, 823-27, 936 P.2d 784, 793-95 (1997).  The court declines to address this particular issue at this procedural juncture, however, because the summary judgment record is sufficient for plaintiff to survive summary judgment on her fraud claim based on the discovery rule in any event.

Court of Appeals has held that "the defendant in a malpractice case cannot take advantage of a defense based on the statute of limitations or the statute of repose where the defendant's own fraudulent concealment has resulted in the delay in discovering the defendant's wrongful actions." *Robinson v. Shah*, 23 Kan. App. 2d 812, 832, 936 P.2d 784, 798 (1997). Under those circumstances, the defendant is equitably estopped from raising the defenses of the statute of limitations and the statute of repose." *Id.* In *Robinson*, a medical malpractice action, the defendant physician had performed a hysterectomy on the plaintiff. *Id.* at 814, 936 P.2d at 787. Approximately one week after the surgery, she began to experience abdominal distress. *Id.* X-rays revealed that a surgical sponge had been left in her abdomen, but the defendant physician fraudulently concealed that fact from her and told her the x-rays were negative and that there were no apparent or unusual complications from the recent abdominal surgery. *Id.* Over the next several years, she continued to see the same physician for gynecological check-ups and she continued to experience abdominal pain and discomfort, but at no time did the physician tell her about the surgical sponge. *Id.* at 814-15, 936 P.2d at 788-89. It was not until nearly ten years later that the plaintiff first learned about the sponge through another physician. *Id.* at 815, 936 P.2d at 788. The court ruled that if the plaintiff were able to prove at trial that she was prevented from discovering that she had a cause of action against the physician for negligence in leaving surgical sponges in her abdomen by the physician's own fraudulent conduct and misrepresentation, the physician would be equitably estopped from raising the defenses of the statute of limitations and the statute of repose. *Id.* at 832-33, 936 P.2d at 798. Consequently, the court reversed and

14

remanded the issue to the trial court for a trial on the merits of this issue. *Id.* at 833, 936 P.2d at 799.

Similarly, here, the record raises a genuine issue of fact concerning whether Dr. Sifers should be equitably estopped from raising the defenses of the statute of limitation and the statute of repose on the grounds that his own fraudulent conduct and misrepresentation resulted in the delay in plaintiff discovering that he performed the wrong beriatric surgery on her. Like the plaintiff in *Robinson*, Ms. Thomas went back to Dr. Sifers and complained about her various post-surgical symptoms. Viewing the record in the light most favorable to Ms. Thomas, Dr. Sifers knew that he had performed a different procedure than the one he had originally promised to perform and he knew that the procedure he performed was often accompanied by the various complications plaintiff was suffering. Yet when she questioned him about the "BPD" designation, he deliberately obfuscated the distinction between the types of procedures. And, he repeatedly assured her that her various symptoms were either normal or not a side effect of her weight loss surgery, and told her that she should check her family history for an explanation. Ms. Thomas continued to see Dr. Sifers for fifteen office visits over the course of more than three and a half years after the surgery and at no time did he disclose to her that he had not performed the duodenal switch procedure even though he knew he had not done so. Under these circumstances, whether Dr. Sifers should be permitted to take advantage of the statute of limitations or the statute of repose where his arguably fraudulent concealment of material facts resulted in a delay that prevented Ms. Thomas from discovering her claim against him is an issue which must be resolved at a trial on the merits.

15

The court further notes that defendants' reliance on *Bradley v. Val-Majias*, 238 F. Supp. 2d 1242 (D. Kan. 2002), is misplaced. There, the court accurately pointed out that under the Kansas Court of Appeals' holding in *Robinson*, a defendant is not equitably estopped from raising the defense of the statute of limitations or the statute of repose if the plaintiff discovered the wrong within sufficient time to permit the filing of the action within the statute of limitations or the statute of repose. *Id.* at 1253; *Robinson*, 23 Kan. App. 2d at 829-30, 936 P.2d at 796-97. This argument, however, assumes that Ms. Thomas should have discovered the fraud within the statute of limitations or the statute of repose. As already discussed, viewing the record in the light most favorable to plaintiff, she is not attributed with having discovered Dr. Sifers' alleged fraud until July of 2006. This, of course, was after the medical malpractice statute of limitations and statute of repose had already expired on her claim. Thus, the court finds this argument to be without merit. Accordingly, this aspect of defendants' motion for summary judgment is denied.

## III.   <u>Battery Claim</u>

Plaintiff's battery claim is subject to the one-year statute of limitations provided in K.S.A. § 60-514(b). "Battery is defined as the unprivileged touching or striking of one person or another, done with the intent of bringing about either a contact or an apprehension of contact, that is harmful or offensive." *Baska v. Scherzer*, 283 Kan. 750, 756, 156 P.3d 617, 622 (2007) (quotation omitted). Here, the asserted claim of battery is Dr. Sifers' performance of an allegedly unauthorized weight loss procedure on plaintiff. This surgery took place on March 19, 2001. Thus, the statute of limitations on this claim expired one year

later on March 19, 2002, which was nearly five years before this case was filed on January 3, 2007. Unlike the statute of limitations set forth in § 60-513 governing plaintiff's fraud and medical malpractice claims as discussed above, § 60-514 does not contain a discovery rule and plaintiff has not argued that any particular tolling doctrine applies to this claim. Accordingly, summary judgment on plaintiff's battery claim is granted.

**IV.    Kansas Consumer Protection Act Claim**

Plaintiff's claim under the Kansas Consumer Protection Act is subject to the three-year statute of limitations provided in K.S.A. § 60-512(2). *Williamson v. Amrani*, 283 Kan. 227, 242, 152 P.3d 60, 71 (2007). Here, plaintiff's claim under the KCPA is premised on Dr. Sifers' alleged misrepresentations prior to her surgery, including the representations he made on the Healthwatch segment concerning the type of weight loss procedure he was performing with his patients as well as the representation he made to her concerning the specific type of procedure he would be performing on her. These representations occurred prior to her surgery on March 19, 2001. Therefore, the statute of limitations on that claim expired before March 19, 2004, which was nearly three years before she filed her complaint on January 3, 2007.

Plaintiff contends that this cause of action accrues only upon discovery of the violation. In support of this argument, plaintiff relies on cases that have applied the discovery rule to KCPA claims under the rationale that they are fraud-based claims. *See, e.g.*, *Rubin v. Riffe Homes, Inc.*, Case No. 98-2118-JWL, 1999 WL 588182, at *3 (D. Kan. July 26, 1999); *Alexander v. Certified Master Builder Corp.*, 43 F. Supp. 2d 1243, 1249

(1999). The Kansas Court of Appeals, however, rejected this approach first in the unpublished case of *Johnsmeyer v. Hanover Development Co. II*, Case No. 93,158, 2005 WL 2495817, at *2-*4 (Kan. Ct. App. Oct. 7, 2005) (per curiam) (unpublished opinion), and more recently in the published decision of *Four Seasons Apartments, Ltd. v. AAA Glass Serv., Inc.*, 37 Kan. App. 2d 248, 250, 152 P.3d 101, 104 (2007). In applying Kansas law, this court is not bound by its own earlier predictions of state law where the Kansas Court of Appeals has more recently decided the issue. *Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1207 n.1 (10th Cir. 2002) (the court must "follow any intermediate state court decision unless other authority convinces [it] that the state supreme court would decide otherwise"). Consequently, the court finds plaintiff's reliance on the discovery rule to be without merit in the context of her KCPA claim. Accordingly, summary judgment on this claim is granted.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' Motion for Summary Judgment (doc. #33) is denied as to plaintiff's fraud and negligence claims, and is granted as to plaintiff's battery and Kansas Consumer Protection Act claims.

**IT IS FURTHER ORDERED** that Plaintiff's Unopposed Motion for Leave to File Surreply (doc. #70) is denied.

18

**IT IS SO ORDERED** this 21st day of December, 2007.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge